ESTATE OF GEORGE S. CARSON, Deceased, ELISABETH F. CARSON, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Carson v. Commissioner
Docket No. 885-73.
United States Tax Court
T.C. Memo 1974-313; 1974 Tax Ct. Memo LEXIS 6; 33 T.C.M. (CCH) 1434; T.C.M. (RIA) 740313; December 18, 1974, Filed. William V. Phelan and Stephen F. Bright, for the petitioner. Robert J. Murray, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency of $11,041.50 in petitioner's estate tax. Following concessions by the parties, the sole issue remaining for decision is whether decedent, George S. Carson, by his will exercised a general power of appointment over certain trust assets. All of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. The decedent died testate on September 9, 1969. At the time of his death, he was a resident of Iowa City, Johnson County, Iowa. Elisabeth F. Carson is the duly appointed and acting executrix of the Estate of George S. Carson, Jr., deceased, under Letters of Appointment issued September 15, 1969. She resided in Iowa City, Iowa, at the time she filed the petition in this case. The Federal estate tax return was filed with the district director of internal revenue at Des Moines, Iowa, on November 9, 1970. *8 The decedent's will, dated August 26, 1946, was duly admitted to probate on September 15, 1969. Its dispositive provisions were, in their entirety, the following: ITEM I I give, devise and bequeath to my wife, Elisabeth F. Carson, all my property of every kind in fee simple absolute, subject, however, to the provisions in ITEM II hereof. ITEM II If at the time of my death either of my children, David N. Carson or George S. Carson III, shall be over twenty-one years of age, I give, devise and bequeath to such child or children over twenty-one, one-sixth (1/6) of my total estate, it being my intention that all of my property shall go to my wife Elisabeth except for a one-sixth share to each of said children who may be over twenty-one years of age at the date of my death. The decedent was survived by his wife, who is the executrix of his estate, and two sons, David N. and George S. Carson, ages 39 and 34, respectively. These were his only heirs at law and sole beneficiaries under his will. During his lifetime the decedent was a beneficiary of a trust established under the will of his father, George S. Carson, Sr., who died testate on April 6, 1929, also a resident *9 of Iowa City. Carson, Sr. was survived by his spouse Celia Carson, then age 48, and four sons: Thomas C. Carson, then age 23; the decedent in this case, then age 21; Burke N. Carson, then age 18; and Frank H. Carson, then age 16. The bulk of the father's estate passed under the residuary clause of his will, which read as follows: 3. All the rest, residue and remainder of my property, real, personal, and mixed, of which I may die seized or possessed, I will, devise and bequeath to the JOHNSON COUNTY SAVINGS BANK of Iowa City, Iowa, AMERICAN TRUST COMPANY, of Davenport, Iowa, and CELIA CARSON, (my wife) in trust, as follows: Said trustees shall receive, subject to the further provisions of this will, an undivided one-third interest in said property, in trust for my wife, CELIA CARSON, if she survive me, during her natural life, and after her death for her testamentary appointees; and the undivided remainder interest in said property said trustees shall receive, subject to the further provisions of this will, in trust for those of my children, Thomas C. Carson, George S. Carson, Jr., Frank H. Carson and Burke N. Carson, and any children that may hereafter be born to me who may *10 survive me, share and share alike, it being my intention to make no provision for any child who does not survive me, providing, however, that if any child of mine shall not survive me but shall leave issue surviving him or her and me, then said trustees shall receive the share which would have gone to such deceased child had it survived me and reached the age of 30 years, in trust for such issue and for such surviving spouse, if any, as hereinafter provided for. * * * 5. I hereby direct my said trustees to pay to my wife, Celia Carson, if she survive me, during the term of her natural life, the net income, not otherwise disposed of, from all of my estate in their possession and control; said income to be payable to my said wife, at such times and in such amounts, as she may desire for the support of herself and my minor children; and if said net income shall not be sufficient at any time to support my said wife and minor children in a proper station in life, I authorize and direct my trustees to provide for her or them out of the corpus of my estate, it being my intention that my wife and children shall be adaquately [sic ] provided for in all event. 6. I hereby direct *11 my trustees to pay to each of my surviving children who may be of lawful age, at the time of my death, and within one year thereafter, and semi annually thereafter, and to each of my surviving children as they become of lawful age, and semi annually thereafter, until such child reaches the age of 25 years, one-half of that portion of the net income of my estate which the interest of each of such children in the trust property bears to the whole trust estate, and as and when each of my surviving children shall reach the age of 25 years, my trustees shall pay and make over, by assignment or otherwise, to such child, one-fourth of the share of such child in the corpus of said trust estate, and then and thereafter semi annually pay to such child all the net income from the remainong [sic] proportionate share of such child in said trust estate until such child shall reach the age of 30 years; and when such child shall reach the age of 30 years, I direct that final distribution of thirty-three and one-third per cent of the remaining share of such child in said trust estate shall be made by said trustees to such child, * * *; I hereby direct my said trustees to pay to such child semiannually, *12 the net income from the remaining fifty per cent of such share of such child in the corpus of my estate so long as such child shall live, and upon the death of such child, I hereby direct my said trustees to dispose of the remainder of said child's share of said estate as follows: If such child shall have died testate after it reaches the age of 30 years, leaving issue or a surviving spouse, said trustees shall set over, by assignment or otherwise, said remainder to the devisees or legatees of such child; if such child shall have died before it reaches the age of 30 years, unmarried and without issue, said remainder shall be disposed of to my other heirs who are beneficiaries under this will, in accordance with the provisions of this will; If such child shall die intestate, leaving issue or a surviving spouse, then my said trustees shall set over, by assignment or otherwise, said remainder to the persons who would be entitled to it under the Intestate Laws of the State of Iowa, if such child had died in possession thereof. 7. In the event of the death of any of my children prior to my death, leaving surviving issue, I direct my said trustees to pay to said surviving issue per *13 stirpes, the income of the share of such deceased child, and to distribute the share of such deceased child in the corpus of said trust estate to such issue per stirpes, in the manner and at the times that such deceased child would have received such income or such distribution of the corpus of said estate had such child survived me and attained the age of 30 years, and when the time arrives when such deceased child would, had he lived, attained the age of 30 years, then my trustees shall make final distribution of the full remaining share of such deceased child to its issue per stirpes, provided such issue shall then be 21 years of age, if not then 21 years of age, such issue shall receive the income from such child's share until it reaches 21 years of age, and said final distribution shall be made when such issue reaches the age of 21 years. In case of the death, without surviving issue, or surviving spouse, of any of my surviving children, before such child shall have reached the age of 30 years, then the undistributed portion of the share of such child shall remain a part of my trust estate and shalll [sic] be distributed as if such child had not survived me and left no issue; *14 and if such surviving child so dying shall leave surviving him or her a spouse and issue, I direct that one-third of the undistributed share of the net income and corpus of my estate, which would have gone to such child had he lived to reach the age of 30 years, shall, at the times and in the manner such child so dying would have received the income and corpus of my estate had he or she reached the age of 30 years, shall be paid to or made over by assignment or otherwise, to said suriving spouse and two-thirds of such income and undistributed share, at like times and like manner, to said surviving issue, providing, said surviving issue shall then be 21 years of age; if not then 21 years of age, said issue shall receive the income until it reaches 21 years of age and said final distribution of the corpus of his or her share of the estate shall be made when such issue reaches the age of 21 years; if such surviving child so dying shall leave surviving him or her a surviving spouse and no issue, then one-half of such income and undistributed share shall be paid or made over by assignment [sic] or otherwise, to such surviving spouse, at like times and in like manner, and the remaining *15 one-half thereof shall remain in my trust estate and be distributed as if such child had died before me, without issue; and if such surviving child so dying shall leave issue surviving him or her and no surviving spouse, then such income and undistributed share, shall, at like times and in like manner, be paid to such surviving issue, provided said issue shall then be 21 years of age; if not 21 years of age such issue shall receive the income until he or she reaches 21 years of age and said final distribution of the corpus of the trust estate shall be made when such issue reaches the age of 21 years, and when the time arrives when such deceased child would, had he lived, attained the age of 30 years, then my trustees shall make final distribution of the full remaining share of said child to such issue, providing such issue shall then be 21 years of age, and if not 21 years of age, such issue shall continue to receive the income from such share until it reaches 21 years of age, and final distribution shall be made when such issue reaches the age of 21 years. 8. In the event that my wife, Celia Carson, shall survive me and die testate, I hereby authorize, empower and direct my remaining *16 trustees to pay or make over, by assignment or otherwise, to such persons as my said wife shall designate by will, lawfully executed, or at the election of my trustees, to the executors of the will of my wife, in trust, for such persons, the remainder of the one-third interest of my said trust estate which my trustees receive hereunder in trust for my said wife. * * * The trust established by this will contained assets valued at $75,547.98 at the death of the decedent herein. The trustee distributed those assets on or about October 16, 1970, to the decedent's surviving spouse and sons, in these shares: Distributee
Share Received
Elisabeth F. Carson
two-thirds
David N. Carson
one-sixth
George S. Carson, III
one-sixth
None of the assets of the trust were included in decedent's gross estate. Both parties agree that, because the power in question was created prior to October 22, 1942, this case is governed by section 2041(a) (1). [1]
*17 The issues before us are: (1) did the decedent have a power of appointment; (2) if so, was it a general power; and (3) was it exercised? Petitioner has raised a procedural point based upon the assertion that the deficiency notice involves only the question of the existence of a general power of appointment and not of its exercise, with the result that the third issue is not properly before the Court. In view of our conclusion that, in any event, petitioner should prevail, the procedural question becomes moot. We are, however, constrained to note that the petitioner herein appears to have been fully aware of the presence of the third issue and that there appears to be no basis for finding that degree of surprise or prejudice which might justify petitioner's position. , affirmed per curiam, (C.A. 2, 1972); ; , affd. (C.A. 2, 1954). We turn immediately to the second issue because we believe that it must be resolved in the petitioner's favor and consequently is dispositive of *18 the case. Since all material events took place in Iowa, the law of that state determines the rights and duties inter se of the various beneficiaries under the two instruments. Federal law is consulted to determine the estate tax consequences of those rights. , amended ; . Assuming for the moment that the provisions of the will of Carson Sr., created a power of appointment in decedent, we are convinced that that will, viewed as a whole, evidences no intention to give decedent such control over the trust corpus as would amount to a "general power of appointment" as required by section 2041. As we construe that instrument, decedent possessed at most the power to dispose of his share of the trust assets only to his surviving spouse and children, i.e., a special power of appointment. It is axiomatic that a will is construed so as to effectuate the testator's intent, and that every part of the will is to be read in the light of the whole. ; . *19 Two features of decedent's father's will are especially significant. The first is that Carson, Sr., expressly and unequivocally created a power of appointment in his surviving spouse. The will refers to that power twice, directing that her share of the corpus be paid to "her testamentary appointees" or "to such persons as * * * [she] shall designate by will." The use of such explicit language with respect to the mother's power creates doubt as to the testator's intention with regard to the power of disposition given to the son, the decedent herein, in terms of "devisees and legatees." The second feature is that Carson, Sr.'s will sets up a complex and comprehensive scheme for the disposition of the two-thirds of his estate to be held in trust during his sons' lifetimes and disposed of at their deaths. Separate provision is made, in the event of a son dying before the age of 30, for the contingencies of survival of that son's spouse or issue, neither, or both. Similar provision is made for a child predeceasing the testator. In each case, the trust corpus passes in designated shares to the spouse and/or issue, if any, or to the testator's other heirs. Even after reaching 30, *20 a child would have no control over the disposition of his share except on one contingency: his death survived by a spouse or issue. Then only would the property pass to his "devisees or legatees." Thus Carson, Sr., clearly envisioned a dispositive scheme that would assure that each child's surviving spouse or issue would be provided for. It seems unlikely that he would have given the children the power to disrupt that pattern by granting them, as he did to his wife, an unrestricted testamentary power of appointment over trust corpus. We find it much more credible that he assumed each child would provide for his own family by will, so that his spouse and issue would be his "devisees or legatees." Otherwise there would be little reason for conditioning the grant of power on the existence of such potential beneficiaries. In short, we believe that an Iowa court would give effect to Carson Sr.'s intent, ascertainable from the entire will, and would hold that the power granted to the decedent herein was exercisable only in favor of his surviving spouse or issue, and not in favor of himself, his estate, his creditors, or the creditors of his estate. Such being the case, the subject property *21 is not includable in decedent's gross estate under section 2041(a) (1). Our resolution of the second issue makes it unnecessary for us to grapple with the other two issues, namely, whether the decedent had a power of appointment (compare (C.A. 5, 1972) with (C.A. 7, 1954)) or whether if we had found the decedent had a general power of appointment, it was "exercised." See Stewart v. United States, [*] F. Supp. [*] (M.D. Fla. 1974). In order to reflect our conclusion herein and the concessions of the parties. Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue. SEC. 2041. POWERS OF APPOINTMENT. (a) In General. - The value of the gross estate shall include the value of all property - (1) Powers of appointment created on or before October 21, 1942. - To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent - (A) by will, or (B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive; but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. * * * (b) Definitions. - For purposes of subsection (a) - (1) General power of appointment. - The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; * * *. ↩